## No. 14,954.

### BAER, ADMINISTRATRIX *v.* BAER.
(128 P. [2d] 478)

Decided August 3, 1942.

Mr. HATFIELD CHILSON, Mr. ROBERT M. MCCREARY, for plaintiff in error.

Mr. MORTIMER STONE, Mr. ALDEN T. HILL, for defendant in error.

*En Banc.*

MR. JUSTICE BOCK delivered the opinion of the court.

IN this litigation we are concerned with a claim against the estate of Henry Alfred Baer, deceased, asserted by his mother, Anna Baer, who appears here as defendant in error. The claim is based upon two promissory notes aggregating $12,000, bearing date April 25, 1934, and due six years from date. It was disallowed by the county court, but on appeal the finding was in favor of claimant, and the administratrix of the estate brings the cause here seeking a reversal of the judgment.

Counsel for the administratrix state that the only question involved is as to delivery or nondelivery of the notes or certain assignments which are involved, to deceased. It is admitted that the notes are valid and never were paid. They could, therefore, have passed only from Anna Baer to deceased as a gift. Was there a gift inter vivos? Henry died October 21, 1938. About two months prior to his demise these notes, together with other documents relating thereto, were in a safety deposit box rented in the name of Anna Baer, at York, Nebraska, where she and her only other son, Walter Baer, made their home. Both Henry and Walter had unqualified authorization of access to this deposit box. In August, 1938, about two months prior to his death, Henry, who lived in Loveland, Colorado, and visited his mother on an average of twice a year, obtained from this box the notes and other documents relating thereto and took them to Loveland, where, upon his death, they were found in his deposit box at that place. For a number of

years both sons had transacted and looked after their mother's business affairs; Walter, because of his location at York, Nebraska, perhaps more than Henry. For some time the mother was not physically able to transact business without the assistance of one or both sons, upon whom she entirely relied. At the time of the trial she was eighty-nine years of age. The trial court found that the notes in question were valid and existing obligations, and were unpaid; that Anna Baer was the owner thereof and that the estate was indebted to her in the amount of $12,000, without interest; that there was no gift to Henry of the notes, nor of the indebtedness represented thereby; that there was no delivery of said notes or of the written assignments thereof by the mother to Henry; that the assignments of the notes were executed for the purpose of having them placed in the safety deposit box of Anna Baer, to be kept and held therein pursuant to some understanding between Walter and Henry as to future contingencies, possibly including the death of their mother; that there was at all times a fiduciary relationship and one of trust and confidence between the mother and Henry, as well as the relation of parent and son; that Henry, as well as Walter, had free access to, and at times did open, the safety deposit box of their mother; and that any presumption which might otherwise arise by reason of the presence of said notes and assignments in the safety deposit box of Henry at the time of, and subsequent to, his death is negatived by those facts.

One of the primary points urged by counsel for plaintiff in error to sustain the theory of a gift to Henry inter vivos is, that the notes and other documents were found in his safety deposit box at Loveland, Colorado, immediately after his death, and that this possession created a presumption of delivery to him as a gift. The status of the two sons in taking care of the property of their mother is well portrayed in the correspondence which was carried on between them. Because of her

advanced age, they were jointly looking after their mother's affairs, always having in mind a division of the property between them after her death. This clearly is indicated in the letters, in which references are made as to what each would obtain of this property after their mother's demise. Pursuant thereto, a number of documents were executed and retained in the safety deposit box at York, Nebraska, and sometimes at Loveland, Colorado. These plans, however, miscarried, in that they suffered from the frailties usually present in an attempt to provide for the transfer of property after the death of the owner without a will. The plan, of course, contemplated the death of the mother before that of either son, because of her advanced age, a natural expectation. The mother, in support of the understanding between her two sons, undoubtedly was willing to assist them therein and to execute and have in existence documents at the time of her death which permitted transfer thereafter without probate; however, there was, as the trial court found, no evidence of a gift to Henry during his lifetime of the notes in question. That there existed a fiduciary relationship between the mother and sons, clearly appears from the record; therefore the presumption of the delivery of the notes to Henry as a gift inter vivos, for which counsel for the administratrix contend, under the circumstances, is not present.

■ "Mere possession by an alleged donee of the alleged donor's property after the latter's death raises no presumption of ownership." 24 Am. Jur., p. 790, §115, and cases cited in note 18.

■ "A gift between persons occupying confidential relations toward each other is, if its validity is attacked, always jealously scrutinized by a court of equity, and unless found to have been made freely, voluntarily, and with a full understanding of the facts, will be invalidated." 24 Am. Jur., p. 756, §49.

■ "Where there is a fiduciary relation or a relation of trust and confidence between a parent and child, then

a presumption arises against the gift." 24 Am. Jur., p. 791, §116.

"Less positive and unequivocal proof is required to establish the delivery of a gift from parent to child than as between persons not so related, and in cases where there is no suggestion of fraud or undue influence very slight evidence will suffice; but that rule does not apply to a case where the child stands in a fiduciary relation to the parent, and has access to and control over his property." 28 C.J., p. 678, §82.

Other than the mere possession of the notes and assignments by Henry, there are no facts indicating a delivery by the mother, and the correspondence in evidence clearly discloses the purpose of keeping all papers connected with, and relating to, these notes in one place. Among these papers were two blank, undated, assignments of the notes, but their status is no different from that of the notes themselves. They all were a part of the same transaction, although not executed at one time. The correspondence between the brothers after the execution of the notes and assignments clearly indicates a plan to pool all of their mother's property and to provide for themselves an equal division thereof after her death. In a letter to Walter, dated August 1, 1935, Henry states: "However, all is mother's, and must be as long as she lives." There is no subsequent correspondence between them indicating otherwise. She outlived Henry, and was still living at the time of the trial in the district court.

Counsel for the administratrix further earnestly contend that the only evidence upon which the claim here is based is the testimony of Walter; that there are some very material variations between his testimony in the county court and that given in the district court; that his testimony, in some respects at least, is false, and that therefore we should disregard it entirely, under the rule laid down in *Larison v. Taylor*, 83 Colo. 430 (266 Pac. 217). That there were contradictions in

his testimony is admitted. A transcript of his evidence given on the trial in the county court was admitted in evidence in the district court hearing, the purpose of its introduction being to show these contradictions. All of his testimony being before the trial court, it undoubtedly considered these contradictions, and his credibility as a witness was, primarily, a matter for its determination; however, the correctness or validity of the claim involved is not dependent solely upon his evidence. The correspondence between the brothers concerning the various transactions, consisting of a number of letters, are of major importance; moreover, Henry's sole examination of the contents of the deposit box in York, Nebraska, in August, 1938, is testified to by a witness who was present on that occasion. The contradictions, in view of all the evidence, are not of such degree as to warrant an invocation of the rule announced in the Larison case. We do not attempt to detail all of the evidence presented on the trial relating to this claim, but a consideration of the entire record, in our opinion, justifies the conclusion that the evidence supports the findings and judgment of the trial court. We have considered other questions presented by the parties, but in view of the conclusion announced we deem it unnecessary to pass upon them.

The judgment is affirmed.

MR. JUSTICE BAKKE not participating.